**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 CASE NO. 2:21-mj-00069

LARRY ALLEN CLAY, JR.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond* (Document 21), the *Response of the United States to Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond* (Document 22), the *Reply to Government's Response to Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond* (Document 24), the *Order of Detention Pending Trial* (Document 18) entered by Magistrate Judge Dwane L. Tinsley, the transcript of the detention hearing (Document 20), and the Pretrial Services Report prepared by the Probation Office (Document 12). In addition, the Court has reviewed the United States' *Motion to Amend the Response of the United States to Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond* (Document 23), wherein the United States corrects a footnote

1

incorrectly stating that the Defendant initially declined to voluntarily provide a DNA sample.   For

the reasons stated herein, the Court finds that the Defendant's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant, Larry Allen Clay, Jr., was charged with sex trafficking of a minor in

violation of 18 U.S.C. § 1591(a)(1) by *Criminal Complaint* (Document 3) on March 24, 2021.

The attached *Affidavit* (Document 3-1) alleges that Mr. Clay paid Kristen Naylor-Legg to arrange

for him to have sexual intercourse with a seventeen-year-old victim.   The victim was a relative in

the care of Ms. Naylor-Legg.   Mr. Clay was employed by the Fayette County Sheriff's Office and

was the Chief of Police for Gauley Bridge at the time of the alleged offense.   The victim reported

that Ms. Naylor-Legg accompanied her to meet Mr. Clay on two occasions in June 2020, and Mr.

Clay paid Ms. Naylor-Legg $50 to have sexual intercourse with her.   He was wearing his police

uniform and had sex with her against his police vehicle in one instance, and the other took place

in the building that houses the Gauley Bridge Police Department.   Mr. Clay ejaculated in the

victim, despite her request that he not do so, during the incident at the Gauley Bridge Police

Department.   She cleaned herself with towels and left the towels in the empty room.   The

affidavit indicates the investigators recovered the towels, and DNA testing did not exclude the

victim and Mr. Clay as contributing to a DNA mixture on the towels.[1]   The affidavit further

alleges that Mr. Clay was aware of the victim's age and discussed her upcoming 18th birthday with

Ms. Naylor-Legg.

---

[1] The affidavit indicates the "the probabilities of selecting an unrelated individual at random who cannot be excluded as a potential contributor to the DNA profile obtained from the item listed…are approximately 1 in 3.49 trillion." (Aff. at ¶ 14.)

Although it is not alleged in the complaint, during the detention hearing, the Assistant United States Attorney proffered that the United States has evidence that Mr. Clay attempted to arrange for other men, including other law enforcement officers, to have sex with the minor victim in exchange for money.   She further proffered that another minor had given a statement that Mr. Clay and Ms. Naylor-Legg had requested that she engage in sexual activity with them.   Further, the victim alleged that Ms. Naylor-Legg took explicit photographs of her and provided them to the Defendant, in addition to selling them to other men online.

The Pretrial Services Report indicates that Mr. Clay has regular contact with his mother, brother, and a sister, all of whom live in the Southern District of West Virginia.   He has lived in the Southern District of West Virginia most of his life.   He shares a home with his fiancée, Catherine Prather Stewart.   He is 55 years old and suffers multiple health issues requiring prescription medication.   His employment in law enforcement began in 2012 and ended in October 2020 as a result of this matter.   He worked for a construction company until becoming unemployed in February 2021.   He has no previous criminal convictions.

Mr. Clay's fiancée, Ms. Prather Stewart, testified during his detention hearing.   She indicated that she was willing to serve as a third-party custodian, ensure that he attended court proceedings as required, and report any violations.   A three-year-old grandchild sometimes visits the home with his parents, and she stated that those visits could take place elsewhere if necessary. The home is located approximately three blocks from an elementary school.   Ms. Prather Stewart testified that she had no awareness of Mr. Clay's alleged offense until hearing rumors around town in the fall of 2020 and was unconcerned about the allegations because she does not believe them.

Magistrate Judge Tinsley found that the Defendant had rebutted the presumption that no condition or combination of conditions could assure his appearance and the safety of the community.   However, he concluded, by clear and convincing evidence, that Mr. Clay posed a danger to the community, citing the weight of the evidence against him, the length of the potential term of incarceration, and his lack of stable employment.   In addition, he noted that the offense involved the abuse of a position of trust and authority and found that the proposed release residence was not suitable.

### STANDARD OF REVIEW

The Magistrate Judge's order details the law governing release or detention pending trial as contained in 18 U.S.C. § 3142.   This Court reviews that order de novo, pursuant to 18 U.S.C. § 3145(a)(1). *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished) ("When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release.").   "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required."   *Id.*

18 U.S.C. §3142(e)(3)(E) provides that "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed…an offense involving a minor victim under section…1591…of this title."   Absent a rebuttable presumption in favor of detention, "[p]ursuant to 18 U.S.C. § 3142(b) & (c), the Court must order the pretrial release on bond of a person, subject

to certain specified statutory conditions, unless the court finds that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person and the community." *United States v. Covington*, No. 2:14-CR-00006, 2014 WL 504880, at \*4 (S.D.W. Va. Feb. 7, 2014) (Johnston, J.).   The factors to be considered in a detention hearing include: "(1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Stewart*, 19 F. App'x at 48 (citing 18 U.S.C. §3142(g)).

## DISCUSSION

The Defendant argues that the United States failed to prove by clear and convincing evidence that there are no conditions or combination of conditions that would assure the safety of the community.   He requests that he be released on bond, with a condition of home confinement. He argues that his status as a law enforcement officer at the time of the offense should have no bearing on consideration of whether detention is warranted, particularly given that he is no longer an officer and thus could no longer employ the coercive power of his previous positions.   He notes that he has no criminal history and "has been nothing but a cooperative, law abiding citizen" since learning of the investigation in September or October 2020.   (Def.'s Mot. at 7.)   He argues that the proximity to an elementary school is of little significance, given that the victim was a 17-year-old and there is no evidence that he has ever targeted prepubescent children.   In addition, he notes his health concerns, the additional dangers facing a former police officer in custody, and the difficulty in ensuring adequate access to his attorney due to restrictions related to the Covid-19

5

pandemic.   He contends that home detention with electronic monitoring "would assure the safety of the community by keeping the defendant away from everyone, other than those members of his family."   (*Id.* at 12.)

The United States proffers detail from the statement of an officer who Mr. Clay solicited to engage in sexual activity with Ms. Naylor-Legg and the minor victim.   The officer also stated that Mr. Clay "had told him on multiple occasions that he could 'hook him up' with local girls to engage in sexual activity."   (Govt. Resp. at 4.)   The United States further proffers that an additional witness came forward after the detention hearing, and indicated that while she was involved in an adult sexual relationship with the Defendant, he would "arrange for her to engage in sexual activity with other law enforcement officers, and defendant would sometimes participate as well in these encounters."   (*Id.* at 5.)   As the United States notes, this information is not itself criminal, but corroborates the statements from the victim and the other law enforcement officer. The United States argues that the potential penalties should the Defendant be convicted are serious, and that the facts of the offense are particularly egregious, involving an on-duty officer paying a minor's caretaker to arrange for him—and potentially others, had the other officer not declined when he learned the victim's age—to have sex with the minor.   It contends that the weight of the evidence against the Defendant, including DNA evidence, is extremely compelling.

Further, the United States argues that the Defendant's decision, as a law enforcement officer charged with protecting the public, to commit a serious offense "while on duty, in uniform, and utilizing police property shows that [he] viewed himself as 'above the law,'" and he therefore cannot be trusted to comply with bond conditions.   (*Id.*at 8.)   The United States argues that the Defendant's fiancée is not an appropriate third-party custodian, given how readily the Defendant

hid his conduct, the ensuing investigation, and the charges from her until his arrest.   The United States next contends that the Defendant poses a danger to the community, as evidenced by the nature of the offense.   Finally, the United States argues that "[w]hile the presumption is no longer dispositive after it is rebutted, the fact that Congress deemed defendant's crime to be so serious and dangerous as to warrant a rebuttable presumption of detention is yet another factor weighing in favor of detention."   (*Id.* at 11.)

Magistrate Judge Tinsley found that the Defendant had rebutted the presumption found in 18 U.S.C. § 3142(e)(3)(E), and neither party has appealed that finding.   Likewise, neither party has contested his finding that the Defendant is not a flight risk.   Thus, the Court will focus on whether the United States proved by clear and convincing evidence that the Defendant poses a danger to another person or the public.

The potential sentence should the Defendant be convicted of the charged offense, including a ten-year mandatory minimum, reflects the seriousness of the offense.   The alleged facts, including the Defendant's history of recruiting fellow law enforcement officers for sexual relationships with women, the vulnerability of the minor victim who was coerced by a caregiver to have sex with the local chief of police in exchange for money paid to the caregiver, and the allegations that the Defendant attempted to pimp the minor victim out to other officers, all add to the gravity of the offense.   The Defendant's argument that he did not use violence is unavailing. The Court declines the invitation to accept the fact that the victim was "on the eve of her eighteenth birthday" and the fact that the Defendant's conduct involved encounters with a single victim as mitigating circumstances.   Further, these facts do not dilute the risk of danger that the Defendant poses to the community.   If the alleged facts are proven, the Defendant caused tremendous harm

7

to a child.   The weight of the evidence, including witness statements and DNA evidence, appears substantial.

Mr. Clay does not have any prior criminal convictions.   He has substantial family ties in the community.   His past employment as a law enforcement officer and chief of police is concerning, given the evidence that he sexually abused a minor while on duty, once next to his police cruiser and once in a police substation.   In addition, the evidence that he invited other officers to join him in abusing the minor victim indicates both a willingness to abuse his authority and a lack of respect for the law.   Much like a defendant who is alleged to have committed a crime while under court supervision, a defendant who is alleged to have committed a crime while entrusted with the responsibility and power of law enforcement has abused trust and demonstrated disdain for the laws he was charged with enforcing.

Finally, the nature and seriousness of the danger to any person or the community posed by the Defendant's release weighs heavily in favor of detention.   The Defendant is charged with sexually abusing and trafficking a minor.   Perpetrators of such crimes often target victims within their familial or social circles, limiting the effectiveness of home confinement in protecting the public.   The proposed third-party custodian's willingness to assume the best of the Defendant reduces her effectiveness in monitoring his conduct and reporting any violations.   The Court therefore finds, by clear and convincing evidence, that no condition or combination of conditions would assure the safety of the community.[2]

---

2 To the extent the Defendant expressed concern regarding his safety, medical treatment, and attorney access if detained, any specific problems in those areas may be brought to the attention of the Court.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the United States' *Motion to Amend the Response of the United States to Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond* (Document 23) be **GRANTED** and the *Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond* (Document 21) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Tinsley, to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:      April 19, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA